William David **BROMWELL,** Personal Representative of the Estate of Elizabeth Naomi Bromwell, Deceased, and John Darrow, Sr., Personal Representative of the Estate of John Darrow, Jr., Deceased, and Ormond Keith Adams, Personal Representative of the Estate of Brian Kent Adams, Deceased and Mitchell J. Cornwell, Personal Representative of the Estate of Brian Kent Adams, Deceased, and Pete L. Wurm, Appellants,

v.

**MICHIGAN MUTUAL INSURANCE COMPANY** and Michigan Automobile Insurance Placement Facility, Appellees.

Superior Court of Pennsylvania.

Argued May 19, 1998.

Filed Aug. 17, 1998.

William A. Loftus, Philadelphia, for appellants.

Michael F. Nerone, Pittsburgh, for appellees.

Before DEL SOLE, JOYCE and MONTEMURO *, JJ.

JOYCE, Judge:

This is an appeal from the final order of the trial court sustaining Appellees' preliminary objections to Appellants' complaint. For the reasons set forth below we reverse. The relevant facts and procedural history of this case are as follows.

This case has its genesis in a tragic collision occurring in June, 1990. At the time, David Stacey (Stacey) operated a tractor-trailer at the Breezewood interchange of the Pennsylvania Turnpike. The tractor-trailer was owned by Ralph Meyers, Trucking, Inc. (Meyers), a Michigan corporation. Meyers was insured under a policy issued by Michigan Mutual Insurance Company (MMIC) on behalf of the Michigan Automobile Insurance Placement Facility (Facility).[1]

* Retired Justice assigned to Superior Court.

1. The Facility apparently guarantees the availability of commercial insurance to any entity which is unable to secure a policy through ordinary sources. Appellants' Amended Complaint, filed 7/14/97, at paragraph 7.

Brian Adams and John Darrow, Jr. drove their motorcycles ahead of the tractor-trailer driven by Stacey. Elizabeth Bromwell was a passenger on Adams' motorcycle. Stacey struck the motorcyclists and then rammed the rear of a tractor-trailer driven by Pete Wurm. As a result, Adams, Bromwell and Darrow were killed in the crash. Wurm was severely injured. Personal representatives were thereafter appointed with regard to the estates of the deceased victims.

Tort actions were commenced against Meyers in federal court by Wurm as well as the representatives of the Bromwell and Darrow estates.[2] The plaintiffs in these actions filed a motion for partial summary judgment which was granted by the court. As a result, the plaintiffs and the insurers entered into a settlement agreement pursuant to which the plaintiffs were to receive $750,000.00 plus any other sums declared to be available as a result of any declaratory judgment action. The agreement further released and discharged Meyers and Stacey but preserved the plaintiffs' rights to pursue the full limits of insurance under the policies issued by MMIC and the Facility. This settlement was approved by the court and the initial actions were dismissed without prejudice.

The plaintiffs subsequently commenced a federal declaratory judgment actions against Meyers, MMIC and the Facility. *See Darrow v. Meyers*, CA No. 92–0183. MMIC and the Facility commenced a separate action, docketed at CA No. 92–1172. These actions were dismissed without prejudice on the grounds that subject matter jurisdiction was lacking. More specifically, the federal court dismissed the actions for lack of diversity or lack of a federal question.

The plaintiffs thereafter instituted another federal declaratory judgment action. *See Bromwell v. Michigan Mutual Ins. Co.*, CA No. 93–1602. This action was likewise dismissed for lack of subject matter jurisdiction. The federal court deemed jurisdiction to be lacking on the ground that a justiciable con-

troversy was nonexistent. No appeal was taken.

Appellants, Wurm and the representatives of the decedents' estates, filed the instant declaratory judgment in state court against Appellees, MMIC and the Facility. Appellees removed the action to federal court. However, the federal court remanded the matter to the court of common pleas for adjudication of Appellants' state law claims.

 Following remand, Appellants filed an amended complaint. Appellees filed preliminary objections in the nature of a demurrer which were sustained by the trial court. Appellants raise the following issue for our review: whether the trial court erred in finding there was no justiciable case or controversy, thereby precluding a cause of action under the Declaratory Judgments Act (DJA), 42 Pa.C.S.A. § 7531–§ 7541.[3]

> Where a preliminary objection in the nature of a demurrer is sustained, an appellate court's review is limited. All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Moser v. Heistand*, 545 Pa. 554, 559, 681 A.2d 1322, 1325 (1996) (citation omitted). We need not accept a party's allegations as true to the extent they constitute conclusions of law, however. *Scarpitti v. Weborg*, 530 Pa. 366, 368, 609 A.2d 147, 148 (1992).

 After a review of the record, this Court assigns error to the trial court's determination that the relief sought by Appellants is outside the purview of the Declaratory Judgment Act. 42 Pa.C.S.A. § 7532 provides:

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations

2. *See Darrow v. Meyers*, CA No. 90–1120, *Bromwell v. Meyers*, CA No. 90–1608 and *Wurm v. Meyers*, CA No. 91–1154. These actions were consolidated.

3. Although Appellants raise the issue as two separate issues, we have consolidated them based on their relatedness for ease of discussion.

whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

"The issuance of a declaratory judgment is a matter of judicial discretion which should only be exercised to illuminate an existing right, status or legal relation.... [The Act] is broad in scope and is to be liberally construed and administered, but it is not without its limitations." *Avrich v. General Accident Insurance*, 367 Pa.Super. 248, 532 A.2d 882, 883 (1987) (citations omitted). "Although the granting of a declaratory judgment petition is a matter which is within the judicial discretion of the court, the availability of the declaratory judgment in a case of this nature must be determined on appeal." *Id.* Furthermore, "[i]n seeking declaratory relief, a plaintiff must establish an interest which must be a direct, substantial and present interest, as contrasted with a remote or speculative interest. For declaratory relief to be appropriate, there must exist an actual controversy.... Declaratory judgment is not appropriate to determine rights in anticipation of events which may never occur. It is an appropriate remedy only where a case presents antagonistic claims indicating imminent and inevitable litigation." *Id.* 532 A.2d at 884.

The trial court dismissed the instant complaint seeking a declaration that the tractor and trailer being operated by the tort-feasor were separate motor vehicles for the purpose of applying the limits of liability insurance coverage. In dismissing the complaint, the trial court found no justiciable controversy based on the lack of a judgment against Appellees, allegedly foreclosing a cause of action under the Declaratory Judgment Act. Appellants contend the trial court misconstrued the law and further that the settlement between the parties acted in the same capacity as a judgment. We agree.

Contrary to the trial court's determination, the Court in *Avrich* did not find that the lack of a judgment is the determining factor for deciding whether a case or controversy exists. Rather, the critical factor is that the declaratory judgment is sought to determine rights in anticipation of events which inevitably will occur.

In defining non-justiciability of an issue, the Court has stated:

In the instance of non-justiciability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.

*Pecorara v. Erie Insurance Exchange*, 393 Pa.Super. 496, 574 A.2d 719, 720 (1990).

In the controversy at hand, the rights of the parties can only be decided by the court, as the dispute centers on the interpretation of the language of the insurance policy pertaining to coverage. Although the parties reached a settlement agreement, it was understood that the issue of further payment based on the interpretation of the coverage provided remained outstanding pending a declaratory judgment action. *See* Settlement and Release Agreement, dated 6/10/93, at paragraph 1. Based on the law regarding when a controversy is justiciable and the instant settlement agreement reached by the parties, the trial court should have properly entertained this action pursuant to the Declaratory Judgment Act. As our colleagues have recited "[t]o hold that such an issue cannot be determined by declaratory judgment would be to invite more complex and extended litigation." *Pecorara*, 574 A.2d at 721.

Order reversed. Remanded for further proceedings consistent with this discussion. Jurisdiction relinquished.