J-A25007-22

2022 PA Super 222

| | | |
|---|---|---|
| PAGE PUBLISHING, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DARYL HEMMERICH | : | No. 289 WDA 2022 |

Appeal from the Order Entered March 7, 2022,
in the Court of Common Pleas of Crawford County,
Civil Division at No(s): AD 2021-505.

BEFORE: KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

OPINION BY KUNSELMAN, J.: **FILED: DECEMBER 28, 2022**

Page Publishing, Inc. ("Publisher") appeals from the order sustaining a preliminary objection and dismissing its complaint against *pro se* Defendant, Daryl Hemmerich ("Author"). Publisher seeks declaratory judgment that an arbitration clause requires Author to pursue any potential, breach-of-contract claims against it before an arbitrator, rather than a court. The trial court ruled that it lacked subject-matter jurisdiction because there is no dispute between the parties. We agree and affirm.

When we review an order that sustains preliminary objections, our "standard of review is *de novo*, and the scope of review is plenary." **Mazur v. Trinity Area Sch. Dist.**, 961 A.2d 96, 101 (Pa. 2008). We reverse "only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief." **Id.** Also, this Court "must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly

deducible from those facts." *Id.* Therefore, we turn to Publisher's complaint to glean the relevant facts of this appeal.

In March of 2020, Author agreed to pay Publisher $10,780 in exchange for publishing, advertising, and distributing four books. *See* Complaint at 2-3; *see also* Complaint Ex. A, B, C, and D at 2. The parties entered four contracts (one for each book).

Those contracts contained an identical arbitration clause as follows:

> Any dispute, controversy, or claim between Publisher and Author regarding this Agreement will be submitted to mandatory and binding arbitration under the terms of the rules of the American Arbitration Assocation as then in effect . . . Arbitration proceedings shall be heard in Crawford County, Pennsylvania by a single arbitrator . . . Any issue concerning the applicability, interpretation, or enforcement of these procedures, including any contention that all or part of these procedures are invalid and unenforceable, will be governed by the Federal Arbitration Act . . . The arbitration award will be final and binding on the parties and may be entered in any court having jurisdiction.

*Id.* at 4.

Publisher received down payments from Author and began editing, formatting, promoting, and distributing the books. Author "became hostile" to Publisher. *Id.* at 3. He hindered Publisher from using its best efforts to fulfill the contracts, asserted Publisher was in breach, and threatened legal action. Publisher believed Author did "not intend to pursue arbitration" as the four contracts required. *Id.* at 4. Hence, it filed this action for declaratory relief, seeking the court to order "that the dispute is subject to the arbitration clause of the [contracts, to] compel the dispute to arbitration . . . ." *Id.* at 5.

Author filed two preliminary objections to the complaint. First, under Pennsylvania Rule of Civil Procedure 1028(a)(1), he challenged the trial court's subject-matter jurisdiction. According to Author, the issue of whether the parties' dispute was subject to arbitration was itself a "dispute, controversy, or claim" subject to the contracts' arbitration clauses, rather than Publisher's declaratory-judgment action. Preliminary Objections at 2.

*Pro se* Author purportedly based his second preliminary objection upon Pa.R.C.P. 1028(a)(5) (*i.e.*, lack of capacity to sue, nonjoinder of a necessary party, or misjoinder of a cause of action). **See** Preliminary Objections at 1. However, he argued that Publisher failed to plead sufficient facts to establish a cause of action for declaratory relief. Hence, Author's second preliminary objection was really in the nature of a demurrer under Pa.R.C.P. 1028(a)(4).

The trial court did not address either of Author's preliminary objections or his arguments. Instead, the court *sua sponte* questioned its subject-matter jurisdiction under the Declaratory Judgment Act. The trial court found that this case presented no controversy in need of adjudication, which deprived it of subject-matter jurisdiction, as a matter of law.

The court stated:

> Jurisdiction is provided by the Declaratory Judgment Act [42 Pa.C.S.A. §§ 7531-7541] as follows:
>
> > Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either

affirmative or negative in form and effect, and such declaration shall have the force and effect of a final judgment or decree.

42 Pa.C.S.A. § 7532 (titled "General scope of declaratory remedy"); *see also* [42 Pa.C.S.A.] § 931 (governing jurisdiction of the courts of common pleas).

Granting declaratory relief is a matter within the judicial discretion of the court. ***Avrich by Avrich v. General Accident Ins. Co.***, 532 A.2d 882, 883 (Pa. Super. 1987). It is "an appropriate remedy only where a case presents ***antagonistic*** claims indicating imminent and inevitable litigation." ***Chester Upland Sch. District v. Commonwealth***, 495 A.2d 981, 983 (Pa. Cmwlth. 1985) (emphasis added) . . . ***see also Tri-State Auto Auction, Inc. v. Gleba Inc.***, 257 A.3d 172, 184 (Pa. Super. 2021) ("a plaintiff in a declaratory-judgment action must demonstrate that an actual controversy exists.") The plaintiffs in ***Avrich***, who had been injured in an automobile accident, and claimed in a separate suit that the other driver had run a stop sign, had submitted claims to the insurance carriers for the other driver and for the owner of his vehicle. When those claims were denied for lack of coverage, the Avriches sought a determination of the insurers' obligations to pay, but the trial court sustained preliminary objections and dismissed the action.

The appellate court affirmed, because no judgment had yet been obtained in the personal-injury action. "Since the negligent party will not be determined until the outcome of that trial and appellees may not be found in any way liable, to seek a declaratory judgment to determine the duty of the insurers to pay is to seek to determine rights which may never occur." [***Avrich***, 532 A.2d at 884.]

Publisher, in merely averring "that Author does not intend to pursue arbitration even though the [contracts] are in full force," has not shown that a dispute exists over whether the [contracts] contain enforceable arbitration clauses. Comp. ¶ 23. This contention, indeed, seems to be contradicted by the quotation of the arbitration provision in Author's pleading. Prelim. Objection at 2. Even if there ***were*** disagreement over the enforceability of that provision, Author's demands and threats of legal action do

- 4 -

not equate to "imminent and inevitable litigation" over claims of (unspecified) contractual breaches. There is no underlying action necessitating preemptive court intervention.

Trial Court Opinion, 3/7/22, at 3-5 (footnotes and some punctuation omitted).

Thus, the trial court "decline[d] to exercise jurisdiction over this case." *Id.* at 5. It entered an order sustaining preliminary objections and dismissing the action. This timely appeal followed.

Publisher raises the following issues:

1. Did the trial court abuse its discretion or commit error of law when it advocated on behalf of the *pro se* [Author] by *sua sponte*, and erroneously, granting a demurrer?

2. Did the trial court abuse its discretion or commit error of law by failing to order discovery by "deposition or otherwise" under Pa.R.C.P. 1028(c)(2)?

3. Did the trial court abuse its discretion or commit error of law by declining to hear the declaratory-judgment action when it based that decision on findings of fact without first hearing evidence on those facts?

4. Did the trial court commit error of law by conflating the concepts of subject-matter jurisdiction and its power to decline to hear a dispute under the Declaratory Judgment Act?

Publisher's Brief at 4-5. We address each issue in turn.

*I.    Trial Court Did Not Sustain a Demurrer*

First, Publisher claims the trial court erred by *sua sponte* raising a demurrer that Author did not assert in his preliminary objections. Simply stated, Publisher misunderstands the trial court's decision.

As explained above, the court *sua sponte* raised the issue of its subject-matter jurisdiction — not a preliminary objection in the nature of a demurrer. The trial court analyzed jurisdiction throughout its opinion and concluded by stating that it "declines to exercise jurisdiction over this case and, accordingly, enters the following" order dismissing the action. Trial Court Opinion, 3/7/22, at 5. Thus, Publisher's first claim of error, challenging an action the trial court did not take, is facially meritless.

## II. Discovery Unneeded

Next, Publisher claims the trial court erred by not ordering discovery over disputed factual issues before dismissing the action for lack of subject-matter jurisdiction. Specifically, Publisher asserts that the court "believed that there was no factual dispute that there was an 'imminent threat' of litigation." Publisher's Brief at 21. Publisher argues this fact remains in dispute, because Author did not attach a notice to plead to his preliminary objections, and, thus, the factual averments therein must be deemed denied.

Publisher again misconstrues the record. Author never asserted in his preliminary objections that there was no dispute between the parties, as Publisher's brief implies.

Rather, Author argued to the trial court that this declaratory-judgment action — regarding whether the arbitration clause applies — is itself a dispute that must be submitted to arbitration. Author explained, "[Publisher] is seeking to assert a claim based on the contracts, which would amount to a

'dispute, controversy, or claim between Publisher and Author regarding the Agreement.'" Preliminary Objections at 2 (quoting Complaint Ex. A, B, C, and D at 4). Thus, Author never denied that an impending dispute existed for breach of the contracts in his pleadings; if anything, his pleading agreed with Publisher that there was a potential, breach-of-contract dispute. Instead, Author challenged the trial court's jurisdiction to resolve this declaratory-judgment action in the face of the arbitration clause.

Therefore, the record belies any assertion that the parties disagreed on issues of fact requiring discovery to resolve. To be sure, the parties agree that the arbitration clause governs their dispute; the pleadings demonstrate this. Publisher's second issue warrants no appellate relief.

### III.    *No Abuse of Discretion*

Third, Publisher claims the trial court abused its discretion by declining to hear the declaratory-judgment action, because it allegedly made findings of fact without hearing any evidence. Publisher "neglects to define what constitutes an abuse of discretion or indicate which type of abuse the trial court allegedly committed." ***Getting v. Mark Sales & Leasing, Inc.***, 274 A.3d 1251, 1259 (Pa. Super. 2022), *reargument denied* (June 14, 2022). An abuse of discretion may take one of three forms. It "occurs only where "the trial court renders a judgment that is (1) manifestly unreasonable, arbitrary, or capricious; or (2) fails to apply the law; or (3) was motivated by partiality, prejudice, bias, or ill will." ***Id.*** (some punctuation omitted). Therefore, we are unpersuaded that an abuse of discretion occurred.

As stated above, the parties agree that the arbitration clauses govern any dispute arising regarding the four contracts. Author conceded that point in his preliminary objections.

Based on Author's concessions, the trial court rationally concluded that no "dispute exists over whether the [contracts] contain enforceable arbitration clauses." Trial Court Opinion, 3/7/22, at 5. Because the Author sought *to enforce* the arbitration agreement against Publisher and Publisher sought *to enforce* the arbitration agreement against Author, the trial court reasonably inferred that the parties must agree that the arbitration clause governs their dispute. Thus, no disagreement over the applicability of that clause existed.

The court then went on to say, "Even if there *were* disagreement over the enforceability of that provision, Author's demands and threats of legal action do not equate to 'imminent and inevitable litigation' over claims of (unspecified) contractual breaches. There is no underlying action necessitating preemptive court intervention." *Id.* (emphasis in original). The absence of imminent and inevitable litigation was an alternative basis for the trial court's conclusion that Publisher presented no controversy in need of judicial review. These conclusions are well-reasoned.

Publisher suggests — but does not identify — what "legal procedure" the trial court was required to follow once it determined the parties agree that the arbitration clause applies. Publisher's Brief at 2. Without citing any Rule of Civil Procedure or precedent, Publisher summarily lists the steps it wishes the

trial court would have taken to ascertain what the pleadings plainly revealed — the parties agree that the arbitration clause binds them.

Rather than explaining which abuse occurred, Publisher suggests what it thinks the trial court "should have" done before dismissing due to the lack of a legal question in need of judicial resolution. However, "abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment." **Johnson v. Johnson**, 222 A.3d 787, 789 (Pa. Super. 2019). Thus, there is no abuse of discretion merely because the trial court "reached a decision contrary to the decision that the appellate court would have reached." **B.B. v. Dep't of Pub. Welfare**, 118 A.3d 482, 485 (Pa. Cmwlth. 2015) (some punctuation omitted).

Accordingly, we dismiss Publisher's third appellate issue as meritless.

IV.    *Trial Court Lacked Subject-Matter Jurisdiction*

Finally, Publisher asserts the trial court erred by conflating the concepts of subject-matter jurisdiction and its authority to decline to hear a dispute under the Declaratory Judgment Act. It believes that, because the courts of common pleas have "unlimited original jurisdiction of all actions and proceedings," that the trial court had subject-matter jurisdiction over this declaratory-judgment matter. Publisher's Brief at 24 (quoting 42 Pa.C.S.A. § 931. Publisher takes issue with the trial court's use of the word "decline" regarding subject-matter jurisdiction, because a "trial court can no more decline subject-matter jurisdiction where it had it than [the court] could grant it where none existed." *Id.* at 25.

In most cases, Publisher would be correct. Typically, courts may not decline jurisdiction over a case, once it is vested. However, as explained below, actions for declaratory are the exception. As Publisher acknowledged in its previous argument, a trial court "has discretion to decline to take a declaratory-judgment action . . . ." *Id.* at 22.

"Whether a court has subject matter jurisdiction over an action is a fundamental issue of law which may be raised **at any time in the course of the proceedings**, including by a reviewing court *sua sponte*." **Mazur**, 961 A.2d at 101. (emphasis added). This extends to trial courts. "Whenever it appears . . . that the court lacks jurisdiction of the subject matter . . . the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction or . . . if that is not possible, it shall dismiss the action." Pennsylvania Rule of Civil Procedure 1032(b); **see also**, **e.g., Clay v. Advanced Computer Applications, Inc.**, 536 A.2d 1375, 1379 (Pa. Super. 1988), *rev'd on other grounds*, 559 A.2d 917 (Pa. 1989) (holding that a trial court may, *sua sponte*, raise subject-matter jurisdiction). Thus, the trial court was within its discretion to raise the question of subject-matter jurisdiction at the preliminary-objections stage of the proceedings.

"Jurisdiction over the subject matter is conferred solely by the Constitution and laws of the Commonwealth." **Mazur**, 961 A.2d at 101. According to the state charter, "There shall be one court of common pleas for each judicial district . . . having unlimited original jurisdiction in all cases **except as may otherwise be provided by law.**" Pa. Const. art. V, § 5(b)

- 10 -

(emphasis added).  In the declaratory-judgment context, the law providing otherwise is the Constitution of the Commonwealth of Pennsylvania and the precedents applying it.

It is settled law that a "court may refuse to assume jurisdiction of an action for declaratory judgment where there is no actual controversy and should refuse to grant declaratory relief where it would not resolve the uncertainty or controversy which spurred the request."  11 Standard Pa. Practice 2d § 66:26 (citing *Odette's, Inc. v. Commonwealth*, 699 A.2d 775, 779 (Pa. Cmwlth. 1997)).  Indeed, this Court applied that test in a case that Publisher has cited — *In re Mampe*, 932 A.2d 954 (Pa. Super. 2007).

There, an elderly, senile mother rewrote her will and transferred assets *inter vivos* to one of her three daughters.  When the other daughters learned of these events, they filed a declaratory-judgment action challenging the new will and *inter vivos* gifts.  A week before trial, mother died.  The trial court proceeded with the declaratory-judgment action, ruled that one daughter exerted undue influence over mother, and invalided the new will and gifts.

On appeal, this Court, *sua sponte*, raised the issue of whether mother's death deprived the trial court of subject-matter jurisdiction.  Specifically, the *Mampe* Court asked whether there was no longer a controversy in need of declaratory judgment.  We observed that a case may not proceed "under the Declaratory Judgment Act unless there exists an actual controversy indicating imminent and inevitable litigation, coupled with a clear manifestation that the

- 11 -

declaration sought will render practical help in ending the dispute." *Id.* at 958.

This jurisdictional limitation on declaratory judgment is constitutional. When the General Assembly first passed a declaratory-judgment act in the early 1900s, litigants attacked its constitutionality. They argued that the act extended court jurisdiction to matters not ripe for judicial review and converted courts from judicial tribunals to advisory bodies. The Supreme Court of Pennsylvania allayed those concerns by interpreting the Declaratory Judgment Act as only conferring jurisdiction over case where a real or imminent controversy exits.

As the Supreme Court explained, "under declaratory-judgment statutes, relief [may] be had only in cases where an actual controversy existed or was imminent . . . ." *In re Cryan's Est.*, 152 A. 675, 677 (Pa. 1930). Otherwise, the act would be "unconstitutional, as a legislative effort to turn the courts from tribunals organized to determine controversies judicially into those for the giving of legal advice, a function not contemplated by our organic law." *Id.* In all jurisdictions with declaratory-judgment actions, "it is a **matter of judicial discretion** whether or not jurisdiction will be taken to any particular case." *Petition of Kariher*, 131 A. 265, 271 (Pa. 1925) (emphasis added). "[J]urisdiction will never be assumed unless the tribunal . . . is satisfied that an actual controversy, or the ripening seeds of one, exists between parties all of whom are *sui juris* and before the court, and that the declaration sought will be a practical help in ending the controversy." *Id.*

As such, the trial court did not conflate subject-matter jurisdiction with its power under the Declaratory Judgment Act. They are one and the same. *See id.*

Moreover, we agree with the trial court's refusal to exercise jurisdiction. A "party seeking declaratory relief must demonstrate: (1) an actual controversy related to the invasion or threatened invasion of one's legal rights and indicating imminent and inevitable litigation; and (2) a direct, substantial, and present interest, as contrasted with a remote or speculative interest." 11 Standard Pa. Practice 2d § 66:26.

Here, subject-matter jurisdiction is constitutionally lacking, because a pending or imminent controversy is lacking regarding the issues that Publisher filed this complaint to resolve. The parties' pleadings reveal that they agree on three fundamental points: (1) the four contracts contain an identical, arbitration clause; (2) that arbitration clause applies to disputes arising under the contracts; and (3) that clause compels them to proceed in arbitration. These are the very issues which Publisher sought to resolve by seeking declaratory judgment. Hence, the trial court properly found that it lacks subject-matter jurisdiction under the Declaratory Judgment Act, because there is no controversy over the applicability of the arbitration clause.

Publisher focuses upon the trial court partially basing its decision on the absence of a pending action by Author against Publisher. That concern seems misplaced, given that Author conceded in a court filing that the arbitration clause is in effect and that it binds the parties. *See* Preliminary Objections at

2; **see also**, **e.g., Marra v. Marra**, 831 A.2d 1183, 1187 (Pa. Super. 2003) ("Judicial estoppel is a doctrine that prohibits a party from taking a position in a subsequent judicial proceeding that is inconsistent with the party's position in a prior judicial proceeding.")  Because the parties are on record asserting that the arbitration clause governs their disputes, the pleadings ensure that any future dispute between them will go to arbitration.[1]

In sum, the applicability of the arbitration clause is resolved; it applies. Thus, the trial court correctly dismissed this declaratory-judgment action due to a lack of subject-matter jurisdiction.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/28/2022

---

[1] Of course, this statement presumes the parties do not subsequently agree to amend or to rescind the arbitration clause, which is their right.  "It is an elementary proposition that any contract can be modified with the assent of both contracting parties . . . ."  **Betterman v. Am. Stores Co.**, 80 A.2d 66, 71 (Pa. 1951).